Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Decided August 31, 2004

No. 03-5267

THOMAS A. EGAN,
APPELLANT

v.

UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT,
APPELLEE

————

On Motion for Summary Affirmance

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv2414)

————

*R. Craig Lawrence*, Assistant U.S. Attorney, filed the motion for summary affirmance for appellee. With him on the motion were *Roscoe C. Howard, Jr.*, U.S. Attorney, *Claire M. Whitaker*, Assistant U.S. Attorney, and *Osvaldo Luis Gratacos*, U.S. Agency for International Development.

*Thomas A. Egan* filed the opposition for appellant.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, ROGERS, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Plaintiff Thomas Egan appeals from the district court's grant of summary judgment in favor of his former employer, the United States Agency for International Development (USAID). Egan brought suit contesting the Foreign Service Grievance Board's dismissal of grievances he filed after leaving the Foreign Service. Because the district court correctly determined that Egan's lawsuit was untimely under the Foreign Service Act, we affirm the district court.

I

Egan was a member of the Foreign Service and served as an auditor in USAID's Office of the Inspector General (OIG) in Bangkok, Thailand during the mid-1990s. He resigned in September 1996, alleging that his superiors had treated him unfairly and had created a "stressful work environment . . . within the Bangkok office." Mem. from T.A. Egan to J. Rush, Jr. (Sept. 27, 1996). Around that time he also accepted a job in the private sector in Singapore, where he began work on or about October 28, 1996.

On January 27, 1997, Egan filed four grievances with the OIG, suggesting, among other things, that his resignation had been involuntary. On March 20, 1997, the OIG rejected those grievances, in part because it found that Egan had voluntarily resigned. It made that finding based on the fact that Egan had chosen the effective date of his resignation, had declined an offer of reassignment to Washington, D.C., and had told OIG employees that he already had a job offer in Singapore. Letter from E.L. Mosley to T.A. Egan 3-4 (Mar. 20, 1997). The OIG also informed Egan of his right to appeal its decision to the Foreign Service Grievance Board (FSGB) within 60 days. *Id.* at 4.

Egan did not appeal to the FSGB. Instead, over a year and a half later he filed a second set of grievances with the OIG, again contending that his resignation had been involun-

tary. Grievance from T.A. Egan to J. Rush, Jr. (Oct. 30, 1998). Specifically, Egan alleged that he had been "effectively ... terminated from [his] position of employment by the OIG" through "acts of duress, coercion, and misinformation." *Id.* at 7-8. Egan requested multiple remedies, including reinstatement, back pay, and allowances for the period of separation. *Id.* at 9. On February 5, 1999, the OIG rejected Egan's second set of grievances, finding the grievances meritless. Letter from E.L. Mosley to T.A. Egan (Feb. 5, 1999). It again reminded Egan that he had 60 days to file an appeal with the FSGB. *Id.* at 2.

This time Egan did appeal, requesting, inter alia, promotion, reassignment to South Africa, and pay and allowances. Letter from T.A. Egan to FSGB at 5 (Mar. 22, 1999). On April 6, 2000, the FSGB declined to hear Egan's appeal. It noted that, "because the principal focus of grievant's claim — that he has been constructively discharged without the rights to which he was entitled — has already been decided adversely to him[,] ... he is estopped from raising again that same issue." Apr. 2000 FSGB Denial at 8. In short, the FSGB concluded that the OIG's March 20, 1997 decision on the issue of "the voluntariness of [his] resignation" had become controlling upon Egan's failure to appeal, and that both the OIG and FSGB were bound by that decision. *Id.* at 9-10.

Although not required by law to file a petition for reconsideration before obtaining judicial review of the FSGB's order, *see* 22 C.F.R. § 910.1, Egan filed two such petitions. The Board denied his initial request for reconsideration on August 9, 2000, finding that Egan had not submitted any newly discovered or previously unavailable material evidence — the standard for reconsideration under the FSGB's regulations. Aug. 2000 FSGB Denial at 3; *see* 22 C.F.R. § 910.1. In response to a subsequent e-mail from Egan, the Board advised him that its regulations contained no provision for a second petition for reconsideration. E-mail from B. Chessin to T.A. Egan (Oct. 10, 2000). Egan nevertheless filed a second request for reconsideration, which the Board denied on June 5, 2001. June 2001 FSGB Denial.

On November 20, 2001, Egan filed a complaint against USAID in the United States District Court for the District of Columbia, seeking review of the FSGB's April 6, 2000 decision and of its August 2000 and June 2001 orders denying reconsideration. The district court granted USAID's motion for summary judgment, finding that Egan's complaint was untimely because he had failed to file it within 180 days of the FSGB's final action, as required by section 1110 of the Foreign Service Act, 22 U.S.C. § 4140. *Egan v. Natsios*, No. 01-2414, Mem. Op. & Order at 3-5 (D.D.C. Aug. 7, 2003). Egan appealed to this court, and USAID now moves for summary affirmance of the district court's judgment.

## II

We review the district court's grant of summary judgment de novo. *Information Handling Serv., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1031–32 (D.C. Cir. 2003). Summary judgment is appropriate only if " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56(c)). Since this case reaches us on a motion for summary affirmance, the appellee must also "demonstrate that the merits of [its] claim are so clear as to justify expedited action." *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980); *see also United States v. Allen*, 408 F.2d 1287, 1288 (D.C. Cir. 1969).

The district court granted summary judgment because it found Egan's complaint untimely under section 1110 of the Foreign Service Act. That section provides:

> Any aggrieved party may obtain judicial review of a final action of the Secretary or the Board on any grievance in the district courts of the United States . . . if the request for judicial review is filed not later than 180 days after the final action of the Secretary or the Board (or in the case of an aggrieved party who is posted abroad at the time of the final action of the Secretary or the Board, if the request for judicial review is filed not later than 180

days after the aggrieved party's return to the United States).

22 U.S.C. § 4140(a). There is no dispute that Egan filed his November 2001 district court complaint more than 180 days after the FSGB's April 2000 decision and August 2000 denial of reconsideration. Accordingly, judicial review of those orders is time barred unless some exception applies.

Egan contends that an exception does apply, namely the exception set forth in section 1110's parenthetical phrase, which permits "an aggrieved party who is posted abroad at the time of the final [FSGB] action" to file within 180 days after he returns to the United States. Egan believes he comes within this exception because, at the time of the FSGB decision, he was "posted abroad" by his new private-sector employer in Singapore.

A phrase like "posted abroad" can, of course, have several meanings. In one context, it could refer to working at the overseas office of a private employer. Indeed, in another context it could mean mailing a letter from a foreign postbox. But the only meaning that makes sense in the context of the Foreign Service Act is working abroad for the Foreign Service. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (declaring that the "words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (internal quotation marks omitted).

The Foreign Service Act uses the term "post" on numerous occasions, and each time it refers to a place where an employee of the Service is stationed. *See, e.g.*, 22 U.S.C. § 4022(a) ("The Secretary shall establish foreign language proficiency requirements for members of the Service who are to be assigned abroad in order that Foreign Service posts abroad will be staffed by individuals [proficient in the language]."); *id.* § 4057 ("The Secretary of State may from time to time establish a list of places which . . . are to be classed as unhealthful posts."); *id.* § 4081(1) ("The Secretary may pay the travel and related expenses of members of the Service . . . including costs or expenses incurred for . . . proceeding

to and returning from assigned posts of duty. . . ."). The legislative history of the specific provision at issue here confirms that interpretation. Both the Senate Report and the House Conference Report on the Foreign Relations Authorization Act for fiscal years 1994 and 1995, which included the relevant language amending section 1110, characterize the amendment as requiring the "filing of judicial review of Foreign Service Grievance Board decisions within 180 days of final action by the Board, or *in the case of employees at posts abroad*, within 180 days after *the employee's* return to the United States." H.R. CONF. REP. NO. 103–482, at 181 (1994) (emphasis added); S. REP. NO. 103-107, at 25 (1993) (same). Both reports also make clear that the "employees" they are referring to are "Foreign Service employees." H.R. CONF. REP. NO. 103–482, at 180; S. REP. NO. 103-107, at 24.

Egan notes that the Act specifically permits former members of the Service to file grievances, *see* 22 U.S.C. § 4132, and argues that to interpret "posted abroad" to refer only to those posted abroad by the government would render the term "aggrieved party" in section 1110 meaningless as far as former members are concerned. *See id.* §§ 4131(a)(1)(G), 4132 (describing the circumstances under which former Service members may file grievances); *see also United States Info. Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993). That is so, he says, because former Service members who are aggrieved and living abroad would not be able to comply with the section's requirements. But this contention is plainly wrong. Aggrieved former Foreign Service members would still have 180 days from the date of the FSGB's final decision to file for review in district court. 22 U.S.C. § 4140(a). Although they would not have the additional time that Congress has afforded members of the Service, 180 days is surely sufficient time in which to file an appeal — even from Singapore. And it is hardly surprising that Congress would make allowances for the difficulties faced by current Foreign Service employees stationed abroad, without making similar provisions for those who have left government service.

For the foregoing reasons, we conclude that Congress intended the more generous time limits afforded those "post-

ed abroad" to apply only to members of the Foreign Service. Because Egan was not a member of the Foreign Service when the FSGB issued the orders from which he seeks to appeal, the statute gave him only 180 days in which to file a request for judicial review. Since Egan's district court complaint came more than 180 days after the FSGB's April 6, 2000 decision and August 9, 2000 denial of reconsideration, his appeal from those orders was untimely.

This leaves only the appeal from the FSGB's June 5, 2001 order denying Egan's second request for reconsideration, which would be timely — if that order were reviewable. But it is not. As we said in *Sendra Corporation v. Magaw*: "While an agency's first refusal to grant reconsideration may be reviewable in limited circumstances, its denial of successive requests for reconsideration of the same decision are not. Whether an agency should even respond to such entreaties is 'committed to agency discretion by law,' and therefore not subject to judicial review." 111 F.3d 162, 167 (D.C. Cir. 1997) (quoting 5 U.S.C. § 701(a)(2)); *see also Schoenbohm v. FCC*, 204 F.3d 243, 245, 250 (D.C. Cir. 2000) (holding that an agency's denial of a request for reconsideration "is generally nonreviewable unless the request . . . was based on new evidence or changed circumstances").

## III

Because Egan's complaint was not filed within the statutory time limit, the district court properly concluded that USAID was entitled to summary judgment as a matter of law. The judgment of the district court is therefore

*Affirmed.*