# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 16, 2014      Decided December 19, 2014

No. 12-5297

KENNETH HASELWANDER,
APPELLANT

v.

JOHN M. MCHUGH, SECRETARY OF THE ARMY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01190)

---

*Michael D.J. Eisenberg* argued the cause and filed the briefs for appellant.

*R. Craig Lawrence*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *John J. Gowel*, Assistant U.S. Attorney.

Before: GRIFFITH, *Circuit Judge*, PILLARD, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant Kenneth Haselwander is a veteran of the United States Army, who served during the Vietnam War and was honorably discharged in 1974. During his tour of duty in Vietnam, Haselwander was wounded and knocked unconscious when an enemy rocket exploded near his sleeping quarters. He was picked up by medical personnel and treated for shrapnel wounds. He was then called back to duty as soon as he had been bandaged, so those who attended to his wounds never had a chance to fill out any medical paperwork for Haselwander. As a result, Haselwander's Army records do not show that he was wounded in hostile action.

In March 2007, Haselwander filed an application with the Army Board for Correction of Military Records ("ABCMR" or "Board") to correct his military records so that he could receive the Purple Heart. This military decoration is awarded in the name of the President of the United States to any member of the Armed Forces who is wounded or killed in action. A service member is entitled to the Purple Heart, *i.e.*, without being recommended, upon meeting specific criteria. Army Reg. 600-8-22 ¶¶ 2–8(c), 2–8(k)(3) (2006) (providing that a service member will be awarded the Purple heart if (1) wounded, injured, or killed in hostile action, terrorist attack, or friendly fire, (2) the wound or injury required medical treatment, and (3) "the records of medical treatment . . . have been made a matter of official Army records"). Haselwander has never been given the Purple Heart because his Army medical records do not show that he was wounded in hostile action. His application to the ABCMR sought to remedy this situation.

In his initial application to the Board, Haselwander provided references who could corroborate his story, along with photographs taken at the time when he was wounded

showing him with bandages on his face and shoulder and wearing a dispensary-issued scrub top. The Board rejected the application, stating that Haselwander had failed to show that he had been "treated for a wound that was sustained as the result of enemy action." ABCMR R. of Proceedings in the Case of Haselwander, Kenneth R. at 4 (Sept. 13, 2007) (the "2007 Decision"), *reprinted in* J.A. 66–70. Haselwander then filed a petition for reconsideration, which included a letter from another veteran who was also wounded and treated at the same time and official reports from his Brigade and Platoon units detailing the events on the day when he was wounded. The Board denied Haselwander's application for reconsideration. ABCMR R. of Proceedings in the Case of Haselwander, Kenneth R. (Oct. 6, 2009) (the "2009 Decision"), *reprinted in* J.A. 42–44. The Board's decision on reconsideration contains two critical findings: (1) "The letters of support submitted with [Haselwander's] request for reconsideration *clearly state that the applicant was wounded in action*"; (2) "The photographs that reportedly show the applicant's wounds bandaged are insufficient as a basis for award of the Purple Heart. *There is no available medical record to corroborate the photographs*." *Id.* at 44 (emphasis added). On the basis of these findings, the Board concluded that the evidence was insufficient to support Haselwander's claims for relief. *Id.*

Haselwander sought review in the District Court. *Haselwander v. McHugh*, 878 F. Supp. 2d 101, 103 (D.D.C. 2012). On cross-motions for summary judgment, the District Court granted the Secretary's motion and denied Haselwander's motion. *Id.* Haselwander now appeals. He points out that the undisputed evidence in the record shows that he was injured in an enemy attack on June 6, 1969, and that he was treated for his wounds by members of the Army medical staff. On the basis of this evidence, Haselwander

claims that his medical records should be corrected and he should be awarded the Purple Heart. The Secretary's response rests on two contentions: First, the Secretary asserts that Haselwander has waived his request for correction of his medical records because he "did not identify medical records to be changed, how those documents should be changed, nor indicate what treatment the documents should say he received or what medical officer treated him." Br. for Appellee at 31. Second, the Secretary argues that the Board's decision that Haselwander is not entitled to the Purple Heart should be upheld because he has no medical records of his injury and treatment.

The Secretary's waiver argument is a red herring. This claim was never raised with the District Court, so it has been forfeited. Furthermore, the Board's decision rejecting the petition for reconsideration did not rest on any finding that Haselwander had asked for the wrong record to be corrected or that he failed to raise a request for correction to his medical records. In sum, the Secretary's waiver argument is groundless.

On the merits, we find that the Board's decision defies reason and is devoid of any evidentiary support. We therefore vacate the decision because it is arbitrary and capricious. *Morall v. DEA*, 412 F.3d 165, 180 (D.C. Cir. 2005). The Board held that the photographs submitted by Haselwander, without more, were insufficient to support his claim. Haselwander's claim, however, does not rest exclusively on photographs. Indeed, the Board specifically found that "[t]he letters of support submitted with [Haselwander's] request for reconsideration *clearly state that the applicant was wounded in action*." 2009 Decision at 3, J.A. 44 (emphasis added). And the Board did not otherwise discredit any of the evidence submitted by Haselwander. Thus, it is apparent that the sole

basis for the Board's rejection of Haselwander's claim is its finding that "*[t]here is no available medical record to corroborate the photographs.*" *Id.* (emphasis added).

The Board misapprehends its powers and duties as a record correction body when it denies an application because the applicant's records are incomplete. The void in Haselwander's medical records is the very error that he seeks to have corrected so that he can secure the Purple Heart to which he is entitled. The Board's reasoning in this case is utterly illogical, *United States v. Morgan*, 393 F.3d 192, 200 (D.C. Cir. 2004), and patently unfair; therefore, the Board's judgment against Haselwander is "unworthy of any deference." *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir. 2012). Haselwander's requests for a correction of his military record and an award of the Purple Heart are supported by uncontested, creditable evidence. We therefore reverse the judgment of the District Court and vacate the decision of the Board. The case will be remanded to the District Court with instructions to remand the case to the ABCMR "for a prompt disposition of this matter consistent with this opinion." *Morall*, 412 F.3d at 184.

## I.  BACKGROUND

### A.  *The ABCMR*

The Secretary of the Army, acting through the ABCMR, is authorized to correct any Army military record when he "considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  "Military record"  is defined broadly to include:

> [A] document or other record that pertains to (1) an individual member or former member of the armed

forces, or (2) at the discretion of the Secretary of the military department concerned, any other military matter affecting a member or former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person.

*Id.* § 1552(g).

An application for correction of a military record is considered by a panel of at least three Board members. 32 C.F.R. § 581.3(e)(3)(i). The Board members are charged with the responsibility to first "[r]eview all applications that are properly before them to determine the existence of error or injustice." *Id.* § 581.3(b)(4)(i). The Board will recommend a correction if it determines that "the preponderance of the evidence shows that an error or injustice exists" in an applicant's records. *Id.* § 581.3(e)(3)(iii)(A). A denial of an application is a final action of the Board. *Id.* § 581.3(g)(2)(i)(A). An applicant may request reconsideration of a denial within one year of the Board's original decision. *Id.* § 581.3(g)(4)(i).

## B. *The Purple Heart Decoration*

As noted above, an Army veteran is entitled to the Purple Heart when he or she suffers a

[1] wound, injury or death [as a] result of enemy or hostile act; . . . [2] the wound or injury . . . required treatment by medical officials; and [3] the records of medical treatment . . . have been made a matter of official Army records.

Army Reg. 600-8-22 ¶ 2–8(k)(3). The Army Regulations define "wound" as:

> [A]n injury to any part of the body from an outside force or agent sustained under one or more of the conditions listed above. A physical lesion is not required, however, the wound for which the award is made must have required treatment by medical personnel and records of medical treatment for wounds or injuries received in action must have been made a matter of official record.

*Id.* at ¶ 2–8(e). An example of an injury that "clearly justif[ies] award of the Purple Heart" is "[i]njury caused by enemy bullet, shrapnel, or other projectile created by enemy action." *Id.* at ¶ 2–8(g)(1).

## C. *Facts and Procedural History*

### 1. Haselwander's Military Service

The record evidence proffered by Haselwander in support of his requested record correction was as follows: In March of 1968, Haselwander commenced his military service with the Army. In January 1969, he deployed to Vietnam as a veterinarian specialist and was assigned to the 49th Infantry Scout Dog Platoon of the 199th Light Infantry Brigade. On June 6, 1969, at Camp Frenzell-Jones, a rocket exploded next to his tent as he slept. Haselwander was blown through the walls of his tent and knocked unconscious. He regained consciousness on the ground outside and then ran to a bunker for cover. Two medics saw him and – as he was apparently covered in blood – immediately took him to the dispensary. Once there, they began removing shrapnel from his wounds.

As Haselwander's wounds were being cleaned and bandaged, members of his scout dog platoon found him and told him that some of their dogs had also been injured in the blast. Haselwander left immediately after being treated by the medical personnel to attend to the dogs. Because he left promptly after receiving treatment, members of the medical staff did not fill out any paperwork on Haselwander's injuries and treatment. He flew with one of the seriously injured scout dogs to the veterinary hospital at Tan Son Nhut Airbase, where he stayed for a few days before returning to Camp Frenzell-Jones.

Haselwander continued his service until he was released from active duty and returned to the United States on January 1, 1970. He was honorably discharged on March 1, 1974. Haselwander has never received the Purple Heart for the wounds he suffered from enemy fire. Another member of his unit, however, who was also wounded as a result of the rocket blast and who was treated alongside Haselwander, was awarded the Purple Heart.

### 2. Haselwander's Application to the ABCMR

Haselwander filed an application with the ABCMR through his U.S. Senator on March 16, 2007. Appl. for Correction of Military R. Under the Provisions of Title 10, U.S. Code, Section 1552, Kenneth Haselwander (Mar. 16, 2007) ("Haselwander Application"), *reprinted in* J.A. 76–77. The application is a one-page form questionnaire with limited space to provide answers. Haselwander filled out and submitted the form without the assistance of counsel. Br. of Appellant at 19. In response to the form question, "I request the following error or injustice in the record to be corrected," he wrote: "I need my 00214 [military discharge form] corrected to reflect that I received a purple heart."

Haselwander Application, J.A. 76. Haselwander attached a statement describing "[t]he particular circumstances of [his] being wounded." *Id.* at 77. The statement describes the events of the rocket attack and Haselwander's medical treatment, and it further explains that "the medics never got the chance to fill out any paperwork on me." *Id.* Haselwander also stated that another member of his unit, Jim VanSyckle, was wounded and treated in the dispensary at the same time, and that Mr. VanSyckle received a Purple Heart for his wound. In addition to his statement, Haselwander provided the names of three fellow veterans, including Mr. VanSyckle, who could corroborate his statement, and photographs taken of him shortly after the explosion. The photographs show Haselwander with bandages on his cheek, chin, and shoulder. J.A. 53.

The Board denied Haselwander's application. 2007 Decision at 4, J.A. 69. In its decision against Haselwander, the Board concluded that, "[u]nfortunately, there is no available evidence of record to show that the applicant was treated for a wound that was sustained as the result of enemy action. Therefore, there is no basis for award of the Purple Heart." *Id.*

### 3. Haselwander's Request for Reconsideration

Haselwander timely filed a request for reconsideration of the Board's decision. He also provided additional evidence: two letters from fellow soldiers corroborating that Haselwander was injured in the rocket blast and treated by medical personnel, a Form 1594 Daily Staff Journal or Duty Officer's Log of the 199th Infantry Brigade dated June 6, 1969 ("Daily Staff Journal"), and a USARV Form 382, Monthly Report of Scout Dog Operations dated July 7, 1969

("Monthly Report"). His original application and statement were incorporated by reference.

One letter accompanying the application for reconsideration is authored by Mr. James VanSyckle, the member of Haselwander's unit who was medically treated at the same time as Haselwander. The letter states:

> I was a dog handler with the 49th Scout Dog Platoon when we were hit with a 122 mm rocket round on June 6, 1969. The rocket hit at the front of our living quarters in which Ken Haselwander and myself were both injured and taken to the 199th Clinic for treatment. If I remember right Ken was wounded in the face and neck area and treated and released at the 199th Clinic, I was taken to the hospital.

J.A. 45. The second letter is from Mr. Richard Hullender, also a member of Haselwander's Scout Dog Platoon. He was present on June 6, 1969, when the rocket hit their compound. His letter reiterates that Haselwander was "blown from his bunk and was injured." *Id.* at 47.

The Daily Staff Journal of the 199th Infantry Brigade, dated June 6, 1969, provides the "facts concerning the rocketing of Camp Frenzell-Jones and Ho Nai Village." *Id.* at 50. The entry states that Camp Frenzell-Jones received three 122mm rocket rounds. *Id.* It lists as among the U.S. injuries: two from the 49th Scout Dog Platoon wounded in hostile action, though neither one seriously; one was evacuated to the hospital. *Id.* It also notes that the 49th Scout Dog Platoon had two dogs wounded. *Id.* It does not give the names of the injured. The Monthly Report of Scout Dog Operations for the month of June, dated July 7, 1969, states that it had two handlers wounded in action during the month. *Id.* at 52.

On October 6, 2009, the Board denied Haselwander's application for reconsideration. 2009 Decision at 3, J.A. 44. After recounting the evidence, the Board rendered the following decision:

> 1. The applicant contends that he should be awarded the Purple Heart for wounds received as a result of enemy action.

> 2. The letters of support submitted with this request for reconsideration clearly state that the applicant was wounded in action.

> 3. The photographs that reportedly show the applicant's wounds bandaged are insufficient by themselves as a basis for award of the Purple Heart. There is no available medical record to corroborate the photographs.

> 4. Unfortunately the available evidence is not sufficiently substantiating to show that the applicant was wounded as the result of hostile action, that he received medical treatment for any such wound, and that such medical treatment was made a matter of official record.

> 5. In view of the above, the applicant's request should be denied.

*Id.*

Haselwander then filed suit in the District Court seeking review of the Board's decision. *Haselwander*, 878 F. Supp. 2d at 103. On cross-motions for summary judgment, the District Court granted the Secretary's motion and denied Haselwander's motion. *Id.*

## II. ANALYSIS

### A. *Standard of Review*

Three principles guide our review of this appeal. First, "[o]n review of a district court's grant of summary judgment in connection with the appeal of a decision of the ABCMR, we review the ABCMR's decision *de novo*," and with "no particular deference to the judgment of the District Court." *Coburn*, 679 F.3d at 929 (alteration in original) (citation and internal quotation marks omitted).

Second, under section 706(2) of the Administrative Procedure Act ("APA"), this court shall "set aside" the ABCMR's "action, findings, and conclusions" regarding the correction of military records if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) ("decisions of the Board are reviewable under the APA, albeit by an unusually deferential application of the 'arbitrary or capricious' standard"). The Secretary has broad discretion in administering the correction of military records. *Kreis*, 866 F.2d at 1514. However, the Board's action must be supported by "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (internal quotation marks omitted)). If the Board's "explanation for its determination . . . lacks any coherence," the court "owe[s] no deference to [the Board's] purported expertise because we cannot discern it." *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006); *see also Coburn*, 679 F.3d at 926 (finding that because

the Board's decisions were "largely incomprehensible," they were "unworthy of any deference").

Third, "when a [military records] correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [statutory] mandate [under 10 U.S.C. § 1552]. And such a violation, contrary to the evidence, is arbitrary and capricious." *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975); *see also Caddington v. United States*, 178 F. Supp. 604, 607 (Ct. Cl. 1959) ("We feel that the Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.").

Applying these principles to the case at hand, we conclude that the Board failed to fulfill its statutory mandate and that the denial of Haselwander's application was arbitrary and capricious.

**B.** ***Haselwander's Request for Correction of His Medical Records Was Properly Raised Before the Board***

The Secretary argues in his brief on appeal that, "[b]ecause Mr. Haselwander never requested that the ABCMR amend his medical records, it is improper for him to raise this issue here." Br. for Appellee at 28; *see also id.* at 28–29 (citing *Coburn*, 679 F.3d at 930–31). We disagree. The error and injustice in Haselwander's record – the omitted documentation of his wounds sustained in hostile action and medical treatment of those wounds – were clearly before the Board. *See Yee*, 512 F.2d at 1386–87 (identifying the Board's duty to remove injustices when they are clearly evidenced in the record, even if not specifically requested by the applicant).

14

There is "a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). However, even if specific arguments are not expressly made to an agency, they may still be raised on appeal if the agency "reasonably should have understood the full extent of [the petitioner's] argument." *Customs and Border Prot. v. Fed. Labor Relations Auth.*, 751 F.3d 665, 669–70 (D.C. Cir. 2014) (citing *NetworkIP, LLC v. FCC*, 548 F.3d 116, 122 (D.C. Cir. 2008) (stating that, although an agency must have an "opportunity to pass" on an issue prior to judicial review, the "issue need not be raised explicitly; it is sufficient if the issue was 'necessarily implicated' in agency proceedings")); *see also Yee*, 512 F.2d at 1386 (finding that the Board "misse[d] the true intent of plaintiff's appeal" where it only addressed the specific request made and failed to fully correct the injustice clearly in the record before it).

Furthermore, the name of the Board – the *Army Board for Correction of Military Records* – speaks volumes. As the name suggests, the Board's members have the duty to "[r]eview all applications that are properly before them to *determine the existence of error or injustice*." 32 C.F.R. § 581.3(b)(4)(i) (emphasis added). The Secretary seeks to avoid this duty here by arguing to this court that Haselwander never requested the ABCMR to correct his Army records. This contention is groundless. First, because the argument was never raised with the District Court, it has been forfeited. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (holding that "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below"). Second, the Board's decision rejecting the petition for reconsideration does not rest on any finding that

Haselwander failed to request that the ABCMR amend his medical records. Third, the record before the Board, including Haselwander's application and supporting materials, makes it clear that Haselwander's application sought to correct his military records so that he could receive the Purple Heart. Although the Secretary's so-called "waiver" argument has been forfeited, we will address it because it is inextricably tied to Haselwander's claim on the merits.

There is no doubt that Haselwander needed a correction to his medical records in order to be eligible for the Purple Heart, and there is no doubt that he knew this when he filed his application with the Board. The supporting statement that he filed with his application quite clearly indicates that an error in his medical record was preventing him from receiving the Purple Heart. The statement says, in pertinent part: "The medics took me to the camp's dispensary where they treated my wounds, pulling out the shrapnel and cleaning out my wounds, and bandaging me up. . . . *[T]he medics never got the chance to fill out any paperwork on me*." Haselwander Application, J.A. 77 (emphasis added). In other words, Haselwander plainly stated that his medical records were insufficient as they stood to allow him to receive the Purple Heart. Therefore, it was obvious that he needed his medical records corrected in order to get the Purple Heart.

In the materials accompanying his application and his petition for reconsideration, Haselwander gave the Board the information that it needed to correct his medical records. He provided a letter from Mr. James VanSyckle, which corroborates Haselwander's statement that he suffered wounds in hostile action, and that his wounds required medical treatment. *See* J.A. 45 ("Ken Haselwander and myself were both injured and taken to the 199th Clinic for treatment."). The letter's description of Haselwander's

injuries also corroborates the photographs, which show him with bandages on his face. He also submitted official reports from his Brigade and Platoon units detailing the events on the day when he was wounded.

In light of Haselwander's application, statement, and supporting documentation, the Board "reasonably should have understood" that the error in his records was the missing entry of his medical treatment for wounds sustained in enemy action. *Customs and Border Prot.*, 751 F.3d at 669–70. Indeed, given the record in this case, it is inconceivable that the Board did not comprehend that Haselwander's application included a request to correct his medical record so that he would be eligible for the Purple Heart. The Board has been sanctioned "to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief," *Caddington*, 178 F. Supp. at 607, and its principal function is "to correct an injustice clearly presented in the record before it," *Yee*, 512 F.2d at 1387. In light of these statutory responsibilities, the Secretary's arguments to this court cannot possibly justify the action under review.

Finally, the Secretary's reliance on *Coburn v. McHugh* is misplaced. In that case, the court merely refused to address one of Coburn's claims because it had not been raised in the first instance with the ABCMR. This case is far different from *Coburn*. As noted above, Haselwander's application before the Board included a request to correct his medical record so that he would be eligible for the Purple Heart. His appeal to this court focuses on precisely the same issue. The fact that Haselwander referenced a discharge form when he submitted his initial application is immaterial. The Board had an obligation to "determine the existence of error or injustice," 32 C.F.R. § 581.3(b)(4)(i), and it had good reason in light of the record before it to understand what Haselwander was

seeking. Any confusion regarding Haselwander's application was surely cleared up when he submitted his application for reconsideration, for the Board found that "[t]he letters of support submitted with [Haselwander's] request for reconsideration *clearly state that the applicant was wounded in action*." J.A. 44 (emphasis added). The obvious "error" in this case is the void in Haselwander's medical record; the obvious "injustice" is that the void in Haselwander's medical record has prevented him from receiving the Purple Heart to which he is entitled. The Board's failures are thus manifest.

**C.** ***The Board's Denial of Haselwander's Request for Correction to His Military Records Was Arbitrary and Capricious***

In his brief to this court, Haselwander presses two arguments:

> The ABCMR failed to uphold its duty under [10 U.S.C.] § 1552 and [32 C.F.R. § 581.3(b)(4)(i), (ii)], and acted arbitrarily, capriciously, [and] contrary to law . . . when [it] 1) failed to correct the Veteran's medical records to reflect the Veteran's injury and treatment at the 199th Clinic in Vietnam on June 6, 1969, as shown by substantial evidence; and 2) when it failed to find that the Veteran was entitled to a Purple Heart [a]ward, as shown by substantial evidence.

Br. of Appellant at 12. These are compelling concerns. To the extent that the Board's decision might be viewed as based on the want of factual support for the contention that Haselwander was wounded in action or that he received medical attention, it cannot be squared with the record before us. Indeed, the Board's decision is "stunningly" myopic and devoid of reasoned decisionmaking. *Morall*, 412 F.3d at 167.

Because the Board's decision is "largely incomprehensible," we are obliged to reverse the decision and remand the case to the Board for proper consideration of Haselwander's application. *Coburn*, 679 F.3d at 926. Our reasons are explained below.

After the Board denied Haselwander's initial application, he requested reconsideration and provided additional evidence to support his claim: two letters from fellow soldiers corroborating that Haselwander was injured in the rocket blast and treated by medics; a Daily Staff Journal of the 199th Infantry Brigade dated June 6, 1969, describing the facts of the bombing, which states that two soldiers from Haselwander's scout dog platoon were wounded in action; and a Monthly Report of Scout Dog Operations, which states that two soldiers from Haselwander's scout dog platoon were injured in the month of June. J.A. 45–52. The evidence provided with his original application was incorporated by reference.

The Board never found that any of the evidence submitted by Haselwander lacked credibility. Nor did the Board find that Haselwander failed to prove that he was wounded and that he received medical treatment. Tellingly, the Board's decision denying Haselwander's application for reconsideration rested solely on two findings:

2. The letters of support submitted with this request for reconsideration clearly state that the applicant was wounded in action. [("Paragraph Two").]

3. The photographs that reportedly show the applicant's wounds bandaged are insufficient by themselves as a basis for award of the Purple Heart. There is no

available medical record to corroborate the photographs. [("Paragraph Three").]

J.A. 44. Paragraph Four of the Board's decision says: "Unfortunately the available evidence is not sufficiently substantiating to show that the applicant was wounded as the result of hostile action, that he received medical treatment for any such wound, and that such medical treatment was made a matter of official record." *Id.* This paragraph, however, is merely a rote recitation of the requirements of the Purple Heart award, in contrast to the specific findings in Paragraphs Two and Three. Indeed, when pressed at oral argument, Counsel for the Secretary conceded that only Paragraphs Two and Three purport to reflect the Board's findings in this case. Counsel also conceded that Paragraph Four is nothing more than "boilerplate" language, parroting the requirements for the Purple Heart, not findings based on the record.

The Board's decision runs in circles. Paragraph Two states that "[t]he letters of support submitted with [Haselwander's] request for reconsideration clearly state that the applicant was wounded in action." Paragraph Three first states that "[t]he photographs that reportedly show the applicant's wounds bandaged are insufficient by themselves as a basis for award of the Purple Heart." That is certainly true enough – Haselwander does not claim that the photographs of a bandaged soldier alone warrant his award of the Purple Heart. But that is not all that he submitted. The second sentence in Paragraph Three says that "[t]here is no available medical record to corroborate the photographs." This is a non sequitur. It simply makes no sense for the Board to say, "We are denying his application because he has no medical records," where the very error stated in Haselwander's application to the Board was that his Army

record lacks the medical records of his injury and treatment on June 6, 1969.

The Board did not suggest, and the Secretary does not contend on appeal, that they lack the authority to correct Haselwander's medical records. The expansive statutory definition of "military record" – "a document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the Secretary of the military department concerned, any other military matter affecting a member or former member of the armed forces" – establishes that the Board clearly has the authority to correct Haselwander's medical records if they contain an error or injustice. 10 U.S.C. § 1552(g). It is even more noteworthy that the Secretary does not contend that the evidence furnished by Haselwander is insufficient to justify a correction of his medical records and an award of the Purple Heart.

In light of the record, we find that the Board's "decision is utterly unreviewable and simply lacks reasons that a court can measure against the arbitrary or capricious standard of the APA. *Kreis*, 866 F.2d at 1514–15. Where, as here, an agency's explanation for its determination lacks any coherence, we owe no deference to [the Board's] purported expertise. *Tripoli Rocketry Ass'n, Inc.*, 437 F.3d at 77." *Coburn*, 679 F.3d at 934 (alterations and internal quotation marks omitted). Haselwander proffered undisputed, creditable evidence to support his application before the Board. In response, the Board rendered a decision that is "largely incomprehensible" and, thus, "unworthy of any deference." *Id.* at 926.

21

**III.** CONCLUSION

For the reasons given above, we reverse the judgment of the District Court and vacate the decision of the Board. The case will be remanded to the District Court with instructions to remand the case to the ABCMR for further proceedings consistent with this opinion.

*So ordered.*