# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 23-5190**

**September Term, 2024**

FILED ON: APRIL 2, 2025

THOMAS G. COLEMAN, MAJOR, USAF (RET.),
　　　　　APPELLANT

v.

FRANK KENDALL, III, THE HONORABLE, SECRETARY OF THE AIR FORCE,
　　　　　APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01822)

———

Before: HENDERSON, WALKER, and PAN, *Circuit Judges*.

## <u>J U D G M E N T</u>

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court entered on July 26, 2023, granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, be **AFFIRMED**.

\*　　\*　　\*

Major Thomas Glenn Coleman was involuntarily separated from the Air Force in March 2013, just 49 days before he would have become eligible for guaranteed retirement and its attendant benefits. In several applications before the Air Force Board of Corrections of Military Records, Coleman argued that his failure to qualify for retirement with benefits was the result of "bureaucratic bungling" related to his move to Singapore in 2006. Although Coleman alleged a flurry of errors in his military records before the Board and the district court, he presses only two claims on appeal. First, Coleman argues that his unit wrongfully delayed his transfer to inactive status after his move to Singapore. Second, Coleman argues that his unit wrongfully delayed the

processing of a waiver that would have facilitated his transfer to a new unit in Asia. Coleman asserts that, absent those errors, he would have had enough years of qualifying service to be guaranteed retirement. As a remedy, Coleman asked the Board to credit him with 49 days of constructive service time. The Board denied Coleman relief, determining there were no errors in his military record. The district court upheld the Board's decisions. We affirm.

## I.

### A.

Air Force Reserve members may retire with access to full military benefits after 20 years of qualifying service. *See* 10 U.S.C. §§ 9311(a), 9326. But members who have completed 18 years of service can receive "sanctuary status," which permits them to complete the last two years of the 20-year requirement even if they otherwise would have been involuntarily separated from the Air Force. *See* 10 U.S.C. §§ 9311(a), 12646(a). To reach the requisite 18 or 20 years of service, members must earn qualifying or "good" years that count for retirement purposes by fulfilling all service obligations during each yearly Retirement/Retention (R/R) period. *See* 10 U.S.C. § 12732(a)(2). They also must avoid being passed over for promotion twice — even though they are expected to move through the ranks according to a pre-specified "promotion clock" — because two failed attempts at promotion result in separation from the Air Force under the military's "up or out" policy. *See* 10 U.S.C. §§ 14303, 14501, 14506. Members can pause their retirement and promotion clocks by entering "inactive" status, during which time they are not expected to perform service duties. *See* 10 U.S.C. § 12732(b)(1).

### B.

The facts underlying this petition are complex and span the period between 2006 to 2013. We recount only the facts relevant to Coleman's claims on appeal.

Coleman was serving in the Air Force Reserve in California when his civilian employer relocated him to Singapore in June 2006. Upon learning of his impending transfer, Coleman was faced with a choice: He could apply for a new reserve position in Asia, which would allow him to continue working toward promotion and eventual retirement; or he could apply for inactive status, which would pause his promotion and retirement clocks. He initially chose to apply for a new reserve position, which required him to first obtain a certain "waiver." J.A. 548. Coleman "completed his portion of the waiver" paperwork in September 2006. Coleman Br. 7. But in February 2007, while his waiver request was pending, Coleman instead sought a transfer to inactive status. In May 2007, Coleman's unit approved his waiver, eight months after his September 2006 request. But by that point, Coleman had to request a second waiver, and he submitted that request in September 2007. In March 2008, while his waiver request was still pending, Coleman again sought transfer to inactive status. Coleman's transfer to inactive status became effective in September 2008. Meanwhile, according to Coleman, "several positions in Asia had passed him by in a more than 2-year ordeal" while he waited for his waiver and inactive-

status paperwork to be processed. J.A. 483. He eventually was assigned to a new reserve position in April 2009.

Later, after being twice passed over for promotion, Coleman faced mandatory separation in June 2011. Seeking to prevent his discharge, Coleman submitted his first application to correct his military records in February 2011, challenging his September 2008 transfer to inactive status. He argued to the Board that, under Air Force Instruction ("AFI") 36-2115 ¶ 4.4.2.2, his inactive status should have been effective in June 2006 (when he relocated to Singapore) or February 2007 (when he first requested transfer to inactive status). The Board granted Coleman's application in part. It determined that, under AFI 36-2115 ¶ 3.6.1, Coleman was entitled to transfer to inactive status within six months of his February 2007 request. It thus advanced Coleman's effective inactive date to August 2007, which changed the time on his promotion and retirement clocks. In light of the adjustment to his promotion clock, the Board also removed a negative promotion decision and the resulting 2011 discharge from Coleman's file.

In June 2012, Coleman submitted a second application to correct his records. That application did not challenge the Board's first decision but instead sought correction of "inadvertent additional injustices" created by that decision, such as two "bad" R/R years and an unfair promotion-board review. J.A. 354. The Board granted Coleman's second application. But when a specially convened promotion board considered his corrected record, Coleman was again twice passed over for promotion. Coleman was thus separated from the Air Force effective March 1, 2013 — just 49 days before Coleman says he would have obtained his 18th year of "good" service and entered "sanctuary status."

In June 2015, Coleman submitted his third application to the Board. He again challenged his delayed transfer to inactive status. He also, and for the first time, challenged his unit's delayed processing of his 2006 waiver request. To remedy those errors, Coleman asked the Board to credit him with "seven weeks of service in the 2012–2013 R/R year that would qualify him for sanctuary protections and allow him to secure a reserve retirement." J.A. 176. The Board rejected Coleman's argument that "errors persist[ed]" from its earlier decisions. J.A. 151. Although "the Board agreed that some error or injustice contributed to his discharge," it concluded that Coleman "ha[d] been made as whole as th[e] Board [was] able or willing to make him under the circumstances." J.A. 152. In December 2018, Coleman requested reconsideration. Again, the Board found that Coleman had not "demonstrate[d] an error or injustice." J.A. 141. The Board said that "the previous corrective actions taken[] put the applicant in position to continue his Air Force career," and his separation was the result of a proper "second deferral for promotion." *Id.*

In June 2022, Coleman brought suit in the district court, arguing that the Board's denial of his third application for correction of his military records was arbitrary and capricious under the Administrative Procedure Act. The district court granted the Secretary's motion for summary judgment and denied Coleman's cross-motion for summary judgment, agreeing with the Board that Coleman "has not identified any unremedied injustice that would warrant crediting him 49 days of unserved time." J.A. 927. Coleman timely appealed. We have jurisdiction under 28

U.S.C. § 1291.  We previously denied the Secretary's motion for summary affirmance.  *See* Doc. 2051953.

## II.

The Secretary of the Air Force, which "act[s] through" the Air Force Board for Correction of Military Records, "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a); 32 C.F.R. § 865.0.  Any member or former member of the Air Force may apply to the Board to have their records corrected.  *See* 32 C.F.R. § 865.3(a)(1).  A panel of at least three Board members reviews each application and, "[i]n appropriate cases, it directs correction of military records to remove an error or injustice."  32 C.F.R. § 865.2(a); *id.* § 865.4(c).  "The Board acts for the Secretary of the Air Force and its decision is final when it . . . [d]enies any application[.]"  *Id.* § 865.4(l)(1).  But "[t]he Board may reconsider an application if the applicant submits newly discovered relevant evidence that was not reasonably available when the application was previously considered."  *Id.* § 865.6(a).

Decisions of the Board are subject to review under the Administrative Procedure Act, which authorizes courts to set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "On review of a district court's grant of summary judgment in connection with the appeal of a decision of the [Board], we review the [Board's] decision *de novo*, and with no particular deference to the judgment of the District Court."  *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (cleaned up).  Because the Secretary has broad discretion to correct a record when she "considers it necessary," 10 U.S.C. § 1552(a)(1), "review of Board decisions involves an unusually deferential application of the 'arbitrary or capricious' standard."  *Haselwander*, 774 F.3d at 996.  But when the Board "fails to correct an injustice clearly presented in the record before it, it is acting in violation of its statutory mandate under 10 U.S.C. § 1552.  And such a violation, contrary to the evidence, is arbitrary and capricious."  *Id.* (cleaned up).

## A.

Coleman argues that the Board failed to correct two errors in his record: his delayed transfer to inactive status, and the delayed processing of his waiver request.  We hold that the Board did not act arbitrarily or capriciously when it concluded that Coleman's record contained no errors.*

---

*    There is a three-year statute of limitations on requests for correction before the Board, *see* 10 U.S.C. § 1552(b), and a six-year statute of limitations on appeals from decisions of the Board, *see* 28 U.S.C. § 2401(a).  We have jurisdiction to hear Coleman's claims, even though they are rooted in events from 2006 and were first addressed by the Board in 2011.  The Board "may excuse a failure to file within three years," 10 U.S.C. § 1552(b), and it did so here by addressing each of Coleman's claims in its decisions resolving Coleman's third application and his request for reconsideration.  Those decisions are properly before us on appeal.  *See Havens v. Mabus*, 759 F.3d 91, 97 n.11 (D.C. Cir. 2014) (noting "APA claims challenging [Board] decisions accrued when the decisions issued"); *Palacios v. Spencer*, 906 F.3d 124, 127–28 (D.C. Cir. 2018) (denials

4

First, Coleman has not demonstrated that there is any error "clearly presented in the record" with respect to his transfer to inactive status in 2007. *Haselwander*, 774 F.3d at 996. Coleman argues only that AFI 36-2115 ¶ 4.4.2.2 required his unit to transfer him to inactive status when they became aware of his move to Singapore in June 2006. *See* Coleman Br. 25–26. But that provision does not impose a duty on the Air Force to automatically convert a reserve member's status to "inactive" when he moves to a foreign country. It states only that the "inactive Standby Reserve[] consists of," among others, "[m]embers without [a mandatory service obligation] who live or work in foreign countries where the [status of forces agreement] prohibits Ready Reservists." AFI 36-2115 ¶ 4.4.2.2; *see* J.A. 279. When Coleman first raised this argument to the Board in 2011, the Board reasonably determined that Air Force policy required only that Coleman's unit transfer him within six months of his request for a transfer to inactive status. *See* AFI 36-2115 ¶ 3.6.1 ("Approved requests for voluntary reassignment . . . must have an [effective date] not earlier than 6 months from the date requests are submitted."). Coleman did not appeal the Board's decision at that time, although he acknowledges that he could have. *See* Oral Arg. 11:17–30. Thus, the Board has not "fail[ed] to correct an injustice clearly presented in the record before it," *Haselwander*, 774 F.3d at 996; and its resolution of this claim was not arbitrary or capricious.

## B.

Nor has Coleman shown that there is any error "clearly presented in the record" with respect to his unit's delay in processing his 2006 waiver request. *Haselwander*, 774 F.3d at 996. Coleman argues that "[a]ll [he] needed to apply for positions in the Pacific Air Force was for his unit to process a simple one-page waiver"; that his unit's eight-month delay "was entirely due to neglect," and "once [his] unit began processing the waiver, it took only thirteen days"; and that the Board was required to correct this "administrative error[]" that "ruined" his record. Coleman Br. 24, 26–27.

Coleman preserved this challenge to the delayed processing of his waiver, before both the Board and the district court. Coleman's third application and subsequent request for reconsideration challenged the "inaction and mishandling" of his "2006 waiver request." J.A. 480–83, 485–86; *see* J.A. 162. The Board acknowledged Coleman's "conten[tion]" of error resulting from his "September 2006 requested relief," J.A. 145, and that Coleman "was unable to participate" in service duties from May 2006 to August 2007 "due to not receiving a transfer to" a new reserve position, J.A. 140. The Board addressed that contention when it concluded that Coleman "failed to sustain his burden of proof of either an error or an injustice." J.A. 141; *see* J.A. 151 ("Insufficient relevant evidence has been presented to demonstrate the existence of an error or injustice."). In the district court, Coleman also pressed his challenge to his unit's "delay in processing [his] waiver," J.A. 94–95, arguing that the delay prevented him from "transferr[ing]

---

of reconsideration are judicially reviewable if the Board "clearly states or indicates that it has reopened the matter").

to one of the new units," J.A. 98, and "cost [him] the opportunity to earn retirement credit," J.A. 105; *see also* J.A. 125–29. Although the district court did not address this argument, Coleman preserved it for our review. *See Bastani v. Am. Fed'n of Gov't Emps., AFL-CIO*, 70 F.4th 563, 569 (D.C. Cir. 2023) ("To preserve a claim of error on appeal, a party typically must *raise* the issue before the trial court." (emphasis added)); *see also Haselwander*, 774 F.3d at 996 (we review Coleman's challenge to the delayed waiver request "*de novo*, and with no particular deference to the judgment of the District Court").

But Coleman's challenge fails on the merits. Coleman provided no evidence of an Air Force policy or any other legal obligation compelling his unit to grant him a waiver, or to do so on an expedited timeline. Indeed, he conceded at oral argument that no such policy exists. *See* Oral Arg. 1:50–2:27. It thus was not arbitrary or capricious for the Board to conclude that there was no unremedied error, even though it acknowledged the delay. *See* 32 C.F.R. § 865.2(c) (providing that the Board "is not an investigative body," and it "normally decides cases on the evidence of the record").

For the foregoing reasons, we affirm the judgment of the district court.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Michael C. McGrail
Deputy Clerk

6