# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 4, 2016        Decided July 8, 2016

No. 15-5009

TRENT M. COBURN,
APPELLANT

v.

PATRICK J. MURPHY, HONORABLE, ACTING SECRETARY OF
THE ARMY
APPELLEE

On Appeal from the United States District Court for the
District of Columbia
(No. 1:09-cv-01266)

*Raymond J. Toney* argued the cause and filed the briefs for appellant.

*Derrick W. Grace*, Special Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON,[*] BROWN, AND PILLARD, *Circuit Judges*.

---

[*] Judge Henderson was drawn to replace Chief Judge Garland, who originally heard argument in this case but did not participate in the opinion. Judge

2

Opinion filed for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  This case returns following our first decision in *Coburn v. McHugh*, 679 F.3d 924 (D.C. Cir. 2012) (*Coburn I*).  In that case we remanded to the Army Board for Correction of Military Records (ABCMR) so the ABCMR could provide a reasoned explanation (if possible) for several questions we could not resolve.  On remand, the parties have largely resolved these questions, but for one, over which a significant dispute remains.  Today we affirm the ABCMR's decision to terminate Trent Coburn's disability processing and its conclusion that Coburn's medical conditions did not warrant further medical review.

I

Because our opinion in *Coburn I* explains the facts of this case in detail, we will repeat here only the facts necessary to understand this appeal.

In 2000, Coburn tested positive for marijuana use in a urine test.  Although Coburn pled not guilty in non-judicial proceedings related to the test, he was found guilty and received a negative non-commissioned officer evaluation report based on the offense.  Coburn challenged these results but was not successful, and in 2001, the Army informed Coburn he had been denied continued Army service.

In early 2002, prior to his separation from the Army, Coburn contacted his primary care physician, Dr. Mario Caycedo of the United States Army Medical Corps, seeking an evaluation of his ongoing back pain and requesting that Dr. Caycedo initiate a Medical Evaluation Board (MEB) to

Henderson has read the briefs, reviewed the record, and listened to the recording of the oral argument.

determine whether he was suitable for a medical discharge. *See* Army Reg. 635–40 ¶-4–10 (2012). Dr. Caycedo agreed to initiate an MEB, and over the next nine months, Coburn underwent a series of appointments with various doctors to evaluate his recovery from prior pulmonary problems and his ongoing problems with back pain. Two visits to the pulmonary clinic determined that Coburn's pulmonary problems had entirely resolved, and a rheumatologist ruled out other conditions that could cause the kind of pulmonary problems Coburn experienced. Separately, a neurosurgeon offered surgery to Coburn to treat a disc protrusion in his back. Coburn refused the surgery.

During this time, the Army tried to effect Coburn's administrative separation, but because MEB proceedings generally take precedence over other types of discharges, Coburn could not be separated until the MEB was no longer ongoing. In October 2002, Dr. Caycedo reviewed Coburn's file, including the latest specialist assessments. He also consulted with Colonel Wayne Schirner, another Army physician who also reviewed Coburn's file. Dr. Caycedo concluded that Coburn's MEB processing should be terminated, and Colonel Schirner agreed. Dr. Caycedo later supplied the following four reasons for terminating the MEB: (1) "Mr. Coburn had declined the option for surgery that could potentially correct his back pain, thus, I concluded that he was not experiencing continual debilitating pain which he had described initially;" (2) "In his several visits to the clinics, Mr. Coburn did not appear to be in great discomfort, and he was able to perform his assigned duties;" (3) "Both the rheumatology and pulmonary clinics examined Mr. Coburn and determined that he required no physical limitations with regards to his pulmonary effusion and the condition had resolved;" (4) "Mr. Coburn had raised no new medical complaints over the past six months." J.A. 169. Dr. Caycedo

wrote a brief letter, which Colonel Schirner also signed, stating that Coburn's MEB proceedings should be terminated. On the same day, Coburn received his Army discharge papers.

Coburn challenged various aspects of these proceedings before the ABCMR, to no avail. He appealed to the district court and then to this Court, where we resolved some of his claims and remanded for the ABCMR to reconsider Coburn's case and address five specific questions about which the record materials did not evidence a reasoned explanation for the Army's decision-making. *Coburn I*, 679 F.3d at 934–35. Since then, the ABCMR has issued a new opinion in response to our remand, affirming the decision to terminate Coburn's MEB and proceed with his discharge.

Coburn appealed the ABCMR's decision on remand, alleging that his MEB had been wrongfully terminated, contrary to the decision of the ABCMR. The district court disagreed, concluding that the Army "hewed to its regulatory program" by applying a reasonable interpretation of its own regulations, which the plaintiff could not show to be clearly erroneous. *Coburn v. McHugh*, 77 F. Supp. 3d 24, 30 (D.D.C. 2014). The district court also rejected Coburn's claim that the ABCMR's decision to affirm the termination of his MEB was arbitrary and capricious and unsupported by substantial evidence. *See id*. at 31. The district court concluded the ABCMR appropriately explained the basis for its decision that Coburn did not suffer from a condition unfitting for service. *Id*.

Coburn appeals to this Court.

5

II

We review a district court's summary judgment decision in an ABCMR appeal "*de novo*, applying the same standards as the district court." *Fontana v. White,* 334 F.3d 80, 81 (D.C. Cir. 2003). Where, as here, the district court reviewed the administrative decision under the Administrative Procedure Act (APA), we also "review the administrative action directly, according no particular deference to the judgment of the District Court." *Holland v. Nat'l Mining Ass'n,* 309 F.3d 808, 814 (D.C. Cir. 2002). Thus, we review the ABCMR's decision on remand to determine whether it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," according to the standard of review for administrative actions set out in section 706 of the APA.[1]

Coburn's first claim on appeal is that the ABCMR acted arbitrarily and capriciously by upholding the ability of Dr. Caycedo and Colonel Schirner to terminate the MEB proceedings consistent with Army regulations. To understand Coburn's claim, it is necessary to understand the basic contours of the MEB process. The ABCMR, relying in part on a staff attorney opinion prepared by the U.S. Army Physical Disability Agency (USAPDA), described the process as beginning with a soldier's commander or physician

---

[1] Coburn asserts that the Army is not entitled to special deference here, which we afford to matters involving "a military judgment requiring military expertise." *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005). While it is not clear that the Army is asking for just this kind of special deference, it is not necessary for us to decide the question, either. By applying the ordinary standard of review due to any agency decision under the APA, we conclude that the Army acted lawfully. We do not apply any special deference in reaching this conclusion.

referring the soldier to an MEB. *See* Army Reg. 40-400 ¶7-1; Army Reg. 40-501 ¶¶3-3 and 3-4. When a physician makes such a referral, the physician necessarily determines that the soldier does not meet at least one condition required by medical retention standards. *See* Army Reg. 40-501, ch. 3. Upon referral, a Medical Training Facility (MTF) takes jurisdiction of the matter and (generally) the commanding officer of that MTF assigns a physician to complete a medical examination and narrative summary of the soldier's medical condition. These documents are then submitted to the MEB, which is a board of two or more Army physicians empaneled to review the soldier's file and make a recommendation concerning fitness for service or the need for an additional referral for disability proceedings. *See* Army Reg. 40-400, ¶¶7-2, 7-3.

Here, Dr. Caycedo was the referring physician who initiated the MEB process for Coburn. Colonel Schirner was the appointing physician, responsible for convening the MEB panel following completion of the medical examination and narrative summary. According to Army regulations, Dr. Schirner, as appointing physician, also serves as the approving physician, who is charged with reviewing the MEB panel's recommendation and either agreeing with that recommendation or sending it back to the panel for further consideration. Army Reg. 40-400, ¶7-13. Before an MEB panel could be convened, however, Dr. Caycedo withdrew his referral and Colonel Schirner terminated the MEB process, deciding that it was not necessary to empanel physicians for an MEB.

The ABCMR concluded both that Dr. Caycedo had the authority to revoke his MEB referral, and that Colonel Schirner possessed the authority to refuse to empanel physicians for an MEB if he determined it would not be

warranted. Coburn disagrees, arguing that Colonel Schirner lacked the legal authority to terminate the MEB process.

In support of his argument, Coburn reads the Army's regulations governing MEBs expansively. He begins with Army Regulation 40-400 at paragraph 7-13, which prohibits an appointing authority (here, Colonel Schirner) from participating in the MEB proceedings "either as a member, witness, consultant, or in any other capacity." According to Coburn, Colonel Schirner exceeded his authority as the appointing physician when he terminated Coburn's MEB because doing so amounted to *participating* in the MEB decision-making process, contrary to paragraph 7-13. Additionally, Coburn asserts that the MEB process cannot be terminated once it is underway. Because Dr. Caycedo "initiated" an MEB and because Coburn was receiving physical disability processing—the first step in any MEB process—Colonel Schirner lacked authority (in Coburn's view) to prematurely terminate the MEB process.

Although the regulatory interpretation Coburn advances is perfectly plausible, the standard of review he must overcome requires more than merely articulating a reasonable alternative reading of the relevant Army regulations. Rather, he must demonstrate that the *Army's* reading of its own regulations is affirmatively *un*reasonable, being instead an arbitrary and capricious interpretation according to the standard of the APA. Coburn has not and cannot meet that standard.

Here, the Army's interpretation of its own regulation is reasonable and neither arbitrary nor capricious. The ABCMR concluded that Colonel Schirner, as the appointing physician "was responsible for overseeing the overall MEB process, and, as such, had the authority to terminate the

process if he also believed the applicant's condition did not warrant referral to an MEB." J.A. 63. Coburn's MEB proceedings never got so far as to compile a narrative summary or empanel an MEB. Instead, Colonel Schirner "determined it was not necessary to appoint physicians and convene an MEB after further medical evaluation was conducted." J.A. 64. Because Colonel Schirner "had the authority to appoint physicians and convene an MEB if a soldier required evaluation," it "necessarily follows that [Colonel Schirner] ha[d] the authority to not appoint physicians to an MEB if he [found] no basis for the MEB." J.A. 64 (emphasis omitted from original).

While this reading may not be the only plausible way to interpret the relevant Army regulations, it is certainly *one* plausible interpretation, and nothing in the regulations forecloses it. While paragraph 7-13 would clearly foreclose Colonel Schirner as appointing/approving physician from participating in MEB *panel* proceedings once a panel is convened, nothing in the regulations prohibits him from exercising authority during the parts of the MEB referral process over which he is given oversight and control.

Accordingly, we hold that the Army's interpretation of its regulations is neither arbitrary nor capricious, nor contrary to law. It was lawful for the ABCMR to conclude that Colonel Schirner acted within his authority and discretion when he terminated Coburn's MEB proceedings.

Coburn also challenges the ABCMR's factual conclusion that his condition did not warrant a disability evaluation. Here again we must affirm the ABCMR's decision so long as it comports with the APA's deferential standard. To do so, we must conclude that the ABCMR "examined the relevant data and articulated a satisfactory explanation for its action

including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We can set aside the ABCMR's decision only if it is "arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

Coburn asserted to the ABCMR that empaneling an MEB remained necessary because his condition had not improved during the course of the preliminary MEB proceedings. In response, the ABCMR advanced three reasons why an MEB was not medically necessary (and thus, why a withdrawal of the referral was within Colonel Schirner's discretion): (1) Coburn had never been diagnosed with disc herniation; (2) Coburn did not suffer from radiculopathy; and (3) Coburn's back condition was successfully managed with conservative treatment. Substantial evidence supports each of these conclusions. The ABCMR cited to the record of Coburn's case, including numerous medical evaluations, many of which occurred after Coburn's initial referral to the MEB process. This evidence amply supports the ABCMR's conclusion that "[n]o post-service medical records close in time to [Coburn's] discharge indicate any evaluation of [his] spine that casts doubt on the Army's conclusions." J.A. 66.

While Coburn disputes the ABCMR's interpretation of his medical records, we are not entrusted with the authority to evaluate the ABCMR's actions *de novo*. Rather, we are bound to uphold those actions so long as substantial evidence supports them. Here, substantial evidence supports the ABCMR's conclusions.

10

## III

For these reasons, we affirm the holding of the district court.

*So ordered.*