# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 15, 2026            Decided June 26, 2026

No. 24-5104

MICHAEL C. BAXLEY,
APPELLANT

v.

DANIEL DRISCOLL, IN HIS OFFICIAL CAPACITY AS SECRETARY
OF THE ARMY, AND UNITED STATES ARMY BOARD FOR
CORRECTION OF MILITARY RECORDS,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02245)

———

*Michael C. Baxley*, *pro se*, filed the briefs for appellant.

*MaKade C. Claypool*, appointed by the Court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was Matthew J. Glover.

*Johnny H. Walker, III*, Assistant United States Attorney, argued the cause for appellees. With him on the brief were *Jeanine Ferris Pirro*, United States Attorney, and *Brian P. Hudak*, Assistant United States Attorney.

Before: HENDERSON and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring Opinion filed by *Circuit Judge* HENDERSON.

WILKINS, *Circuit Judge*:  Michael C. Baxley brought suit in the District Court to review the decision of the Army Board of Correction of Military Records (the "Board") to not upgrade Mr. Baxley's discharge to "honorable" status.  Mr. Baxley asserted that exempt evidence was used during his discharge proceeding thus requiring an "honorable" discharge under the 1976 U.S. Army Regulation 600-85 Exemption Policy (the "Exemption Policy").  He also asserted that the applicable Army guidance regarding upgrading discharges due to mental health conditions (the "Kurta Memorandum") was not followed.  The District Court granted the Board's motion for summary judgment on both issues.  Because the Board made key errors regarding the exempt evidence issue that render the Board's decision arbitrary and capricious, we reverse and remand in part.  Because the Board did not make errors regarding the applicable Army guidance, we affirm in part.

## I.

A fuller recitation of the facts can be found in the District Court's opinions in *Baxley v. Wormuth*, No. 1:21-cv-2245, 2024 WL 774854 (D.D.C. Feb. 26, 2024), *reconsideration denied,* No. 1:21-cv-2245, 2024 WL 3443326 (D.D.C. July 15, 2024), and *aff'd in part sub nom. Baxley v. Driscoll*, No. 24-5104, 2025 WL 717384 (D.C. Cir. Feb. 28, 2025).  Only the most salient facts related to Mr. Baxley's appeal are set forth below.

Mr. Baxley joined the Army in 1974. Due to a series of misconduct, Mr. Baxley was identified by the Army as a "drug abuser" and joined the Alcohol and Drug Addiction Prevention and Control Program (the "ADAPCP"), which is the Army's rehabilitation program. J.A. 140, 236. In November 1975, however, the Army designated him a rehabilitation program failure. Afterwards, Mr. Baxley was involved in further misconduct and violence including at another service post to which he was transferred.

Subsequently, Mr. Baxley's captain recommended that Mr. Baxley be discharged for "misconduct." J.A. 155. At the time, Mr. Baxley also participated in a mental health evaluation to determine his fitness for service (the "September 1976 Mental Health Exam"), and the evaluator found that Mr. Baxley did not appear to be "[d]epressed" or suffering from a "[s]ignificant mental illness." J.A. 160.

In October 1976, a discharge board convened to decide whether Mr. Baxley should be discharged. At the start of those proceedings, the Army's prosecutor introduced evidence including several documents highlighting Mr. Baxley's rehabilitation failure designation.[1] Mr. Baxley's counsel did

---

[1] These documents include the following:

Exhibit C-6: A "Social Work Inprocessing Form" from August 1976, explaining that Mr. Baxley "qualifies for … discharge" based on "the documentation in his 201 file" (*i.e.*, his personnel file), which included "records [that Mr. Baxley] was considered [an] ADAPCP failure." J.A. 204–05.

Exhibit C-8: "Correctional Progress Notes" from September 1976, stating that Mr. Baxley "had been identified as a drug rehab failure." J.A. 173.

Exhibit C-18: "Bar to Reenlistment" certificate, stating that Mr. Baxley "has been identified as a drug rehabilitation failure" with "no feasible improvement in the future." J.A. 236.

not object to the evidence, and the entire packet was given to the discharge board. Mr. Baxley then offered his own statement admitting he "was sent to a drug rehabilitation program," but was "found to be a rehabilitative failure." J.A. 145.

The discharge board ultimately recommended that Mr. Baxley be discharged with an "Undesirable Discharge Certificate," relying on Mr. Baxley's court martial conviction and "[n]umerous discreditable incidents." J.A. 146. But the discharge board recognized that some of the documents presented "were . . . possibly exempt information according to" the Exemption Policy and thus were not considered. *Id.* Less than a week later, Mr. Baxley's counsel filed an objection letter explaining "that certain evidence present in the 'board packet . . .' was in fact 'exempt' as defined in [the Exemption Policy]." J.A. 141. Counsel also explained that while the discharge board "indicated that it [had] disregarded this evidence," the Exemption Policy forbids even "the presence of the evidence of the packet . . . presented to the board." *Id.* Mr. Baxley's counsel also explained, "by referring to [Mr. Baxley] as a rehabilitation failure," the packet evidence "indirectly indicates that he had used drugs after enrollment in the program," and this was prohibited evidence under the Exemption Policy. *Id.* At any rate, Mr. Baxley's counsel argued, "once the evidence was read it [was] impossible to say that it had no effect at all" on the discharge board's decision. *Id.*

This objection prompted a staff judge advocate to issue an advisory opinion explaining why the evidence introduced was

---

Exhibit C-22: "Correctional Progress Notes" from August 1976, stating that Mr. Baxley "has been declared a drug/alcohol rehab failure." J.A. 177.

not exempt. J.A. 140. Following the advisory opinion, the discharge board's recommendation was approved, and Mr. Baxley was discharged on November 10, 1976 with an "under other than honorable conditions discharge." J.A. 33–34. A few years later—and for reasons "unknown"—Mr. Baxley's status was upgraded to "under honorable conditions (general)." J.A. 34; *accord* J.A. 133.

Flashing forward a few decades, by early 2003, Mr. Baxley was diagnosed with a major depressive disorder and prescribed antidepressants and medication to curb his substance addictions. In 2018, the Department of Veterans Affairs (the "VA") found that "[b]ased on a review of the evidence" submitted, Mr. Baxley had a "[s]ervice connect[ed]" mental health condition "for Persistent Depressive Disorder." J.A. 118. The VA also later found that Mr. Baxley's service-connected condition rendered him unemployable and permanently disabled, qualifying him to receive one hundred percent disability benefits. This determination allowed Mr. Baxley to start receiving benefits in March 2018. However, Mr. Baxley could not access some of these benefits because he was unable to receive an identification card since his discharge was not "honorable."

In 2018, Mr. Baxley asked the Board to upgrade his "under honorable conditions" discharge status to "honorable." The Board considered Mr. Baxley's request initially and upon voluntary remand as well. Two Army medical advisors reviewed Mr. Baxley's record and found that he did not experience a "behavioral health condition" during service, J.A. 108, because the September 1976 Mental Health Exam indicated Mr. Baxley "did not have a psychiatric disorder," J.A. 69. The Board did analyze the questions outlined in the Kurta Memorandum but found that "evidence" of a "mitigating behavioral health condition … very thin." J.A. 46. The Board

also did not find a violation of the Exemption Policy because Mr. Baxley "did not object to the introduction of any documents submitted by the government at the outset of the hearing;" Mr. Baxley himself "introduced and discussed his substance abuse rehabilitation efforts" during the discharge hearing; and the staff judge advocate's advisory opinion "persuasively addresse[d] and answer[ed]" that "evidence of substance abuse rehabilitation was [not] improperly used to involuntarily separate" Mr. Baxley. J.A. 47. Mr. Baxley challenged the Board's decision in the District Court. The District Court granted summary judgment to the Board, and Mr. Baxley appealed.

## II.

Because this case arises under the Administrative Procedure Act, this Court "accord[s] no particular deference to the judgment of the District Court," and instead "review[s] the administrative action directly." *Coburn v. Murphy*, 827 F.3d 1122, 1124 (D.C. Cir. 2016) (citation omitted). Accordingly, this Court reviews the Board's decision *de novo* "to determine whether it was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)); *accord Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014).

## III.

Mr. Baxley contends that evidence indicating that he was a rehabilitation program failure is exempt evidence that requires him to receive an "honorable" discharge because it is evidence directly or indirectly developed by information that he revealed to a counselor in the rehabilitation program. Because the Board did not engage with this key question, its decision was arbitrary and capricious as to this issue.

**A.**

The 1976 U.S. Army Regulation 600-85 Exemption Policy (*i.e.*, the Exemption Policy) is the contemporaneous Army policy that governed disciplinary and evidentiary immunity for an Army member involved in the ADAPCP. The purpose of the Exemption Policy "[wa]s to facilitate effective identification, treatment, and rehabilitation by eliminating the barriers to successful communications between alcohol or other drug abusers on the one hand, and ADAPCP counselors or physicians supporting the program on the other." U.S. Dep't of the Army Regul. ("AR") 600-85 ¶ 3-15 (J.A. 223). Accordingly, the Exemption Policy sought to prevent disclosure of certain ADAPCP-related information from being used against a servicemember in discharge proceedings, except in certain circumstances. In relevant part, the Exemption Policy requires an "honorable" discharge for the servicemember whenever, *inter alia*, the Army's prosecuting officer initially introduces the following prohibited evidence to the discharge board: "information, or evidence developed by or as a direct or indirect result of such information, that is revealed to a physician or ADAPCP counselor at a scheduled interview or evaluation . . . ." AR 600-85 tbl. 3-1, col. D (1976) (J.A. 227). The key question on appeal is whether evidence that Mr. Baxley was a rehabilitation failure falls within the bounds of this prohibited evidence.

**B.**

The Board made key errors that rendered its decision on this exempt evidence issue arbitrary and capricious.

To start, the Board described the Exemption Policy in effect in 1976 as "analogous" to the current "Limited Use Policy," adopted in 2020, AR 600-85 ¶ 10-12 (2020), without

acknowledging key differences between the policies that are relevant to the analysis. For instance, the current Limited Use Policy permits the introduction of protected evidence in certain cases, *e.g.*, for impeachment or rebuttal purposes, AR 600-85 ¶ 10-12(d) (2020), while the 1976 policy did not. This is important, because the Board seemed to rely upon the fact that Mr. Baxley's attorney did not initially object to the evidence that Mr. Baxley had been deemed a "rehabilitation failure" and that Mr. Baxley mentioned the rehabilitation failure finding during his testimony too, *see* J.A. 47, even though the 1976 Exemption Policy is categorical and leaves no room for any sort of harmless error analysis if, as here, the Army prosecutor introduced the allegedly exempt evidence first, *see* AR 600-85 ¶ 3-18(d) (1976) (J.A. 226) ("[I]f either the commander (in his/her recommendation for discharge or in documents forwarded with his/her recommendation), or any member of the board of officers adjudicating the servicemember's case, or the investigating officer/recorder presenting the case before the board, initially introduces evidence prohibited above, the member will receive an honorable discharge certificate, regardless of his overall performance of duty.").

Most significantly, the Board's decision did not engage meaningfully with the central question of whether the allegedly exempt evidence, *i.e.*, Mr. Baxley's rehabilitation failure designation, falls within the definition found in the Exemption Policy's table 3-1, column D. AR 600-85 tbl. 3-1, col. D (1976) (J.A. 227). The Exemption Policy prohibits use of "information, or evidence *developed by* or as a direct or indirect result of such *information, that is revealed to a physician or ADAPCP counselor* at a scheduled interview or evaluation." *Id*. (emphasis added). The Board seemed to adopt the staff judge advocate position, *see* J.A. 140, that evidence in the form of a rehabilitation failure designation is *never* exempt evidence under the Exemption Policy. *See* J.A. 47. Such a categorical

approach does not comport with the text of the policy and how such a designation is commonly formulated.

The text of the Exemption Policy protects information "developed by" or "directly or indirectly resulting from" information that Mr. Baxley provided to counselors or physicians at scheduled sessions in the ADAPCP program. The Board never considered whether Mr. Baxley's rehabilitation failure designation was likely developed by or indirectly resulted from exactly such information. This is a crucial flaw in the Board's decision. The regulations *required* that the immediate unit commander consult with rehabilitation program staff when determining "rehabilitation progress," *see* AR 600-85 ¶ 5-8 (1976) (J.A. 233), and one way that rehabilitation could be deemed a failure was if "[t]he immediate unit commander, *in consultation with the ADAPCP rehabilitation staff*, has determined that the service member has received maximum benefit from rehabilitation efforts and clearly demonstrates recalcitrance to the degree that further rehabilitative efforts in the military environment would not result in return to full effective duty." *See* AR 600-85 ¶ 5-8(b)(3) (1976) (J.A. 233) (emphasis added).

In other words, the regulations require that the immediate unit commander consult with ADAPCP program staff in making a rehabilitation progress determination, including rehabilitation failure. The regulations then provide that a commander could "develop" his or her conclusion that a servicemember is a rehabilitation failure from talking to the ADAPCP counselors about the soldier's statements to them during treatment, which could "directly or indirectly result" in the commander determining that the soldier was "recalcitrant" to further treatment. Indeed, several courts have described events as unfolding in this very manner. *See, e.g.*, *Rogers v. United States*, 24 Cl. Ct. 676, 679 (1991), *opinion corrected,*

26 Cl. Ct. 255 (1992), and *aff'd,* 996 F.2d 317 (Fed. Cir. 1993) ("Accordingly, after the acting commander consulted with the rehabilitation team, he determined that [the service member] was a rehabilitation failure, and made his final decision . . . to separate him from military service."); *Martin v. McDonald*, 761 F.3d 1366, 1370 (Fed. Cir. 2014) (discussing that alcohol rehabilitation failure may be based on the participant's "state of mind at the end of the rehabilitation program"); *Burchell v. Dep't of Army*, 679 F. Supp. 1393, 1397 (D.S.C. 1988), *aff'd in part, rev'd in part sub nom. Rodgers v. Lehman*, 869 F.2d 253 (4th Cir. 1989) ("[T]he plaintiff was terminated from the ADAPCP as a 'rehabilitation failure' based on his 'lack of commitment to the treatment process and poor attendance record.'").

In sum, it is entirely possible that a rehabilitation failure designation was developed as a direct or indirect result of Mr. Baxley's statements to his ADAPCP counselors, which would fall squarely within the bounds of the Exemption Policy. The Board found that the rehabilitation failure designation could *never* come within the scope of the Exemption Policy. *See* J.A. 140. We reject this suggestion as implausible. Indeed, it would appear that the only way that the rehabilitation failure designation could *not* have been developed from exempt evidence is if the commander somehow ignored all of the information he gleaned from his required conferral with the ADAPCP program staff when making his rehabilitation progress determination. This seems unlikely and the Board made no such finding.

If the rehabilitation failure designation included the commander's consideration of what he knew from his required conferral with the ADAPCP program staff, then the rehabilitation failure information introduced by the Army prosecutor at Mr. Baxley's discharge proceeding would be

exempt evidence requiring an "honorable" discharge for Mr. Baxley. The Board did not ask, let alone answer, this central question of what information was directly or indirectly used to develop the rehabilitation failure designation, and both parties agree that the answer is unclear based on the present record, *Amicus* Br. 39; Appellee Br. 35. Without this answer, the Board could not have determined whether exempt evidence was introduced in Mr. Baxley's discharge proceeding.

Accordingly, we reverse the District Court's grant of summary judgment for the Board as to the Exemption Policy issue and remand with instructions to vacate the Board's decision as to this issue and remand to the Board for further proceedings consistent with this opinion.

## IV.

Mr. Baxley also contends that the Board failed to fully consider the relevant factors outlined in the Kurta Memorandum. We conclude that the Board's decision was not arbitrary and capricious on this issue because the Board, through its medical advisors, engaged with the Kurta Memorandum's questions, none of which are binding.

## A.

The Memorandum & Clarifying Guidance to Review Boards Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions (*i.e.*, the Kurta Memorandum) provides guidance for reviewing boards considering applications to upgrade discharge status based on mental health conditions. J.A. 119–23. The guidance, adopted in 2017, was to be immediately implemented. The Kurta Memorandum outlines four questions that are "typically involve[d]" in a discharge status upgrade: (1) Did the veteran

have a condition or experience that may excuse or mitigate the discharge? (2) Did that condition exist / experience occur during military service? (3) Does that condition or experience actually excuse or mitigate the discharge? (4) Does that condition or experience outweigh the discharge? J.A. 120. The Kurta Memorandum additionally provides principles and factors to help guide the reviewing board's inquiry, including evidentiary principles and liberal construction principles. None of these are binding on or dispositive for the Board.

**B.**

Upon remand, the Board's medical advisor did parse through each of the Kurta Memorandum questions. The Kurta Memorandum does not purport to require that each of these questions be answered but rather states that a discharge upgrade review will "typically involve" these questions. J.A. 120. Nevertheless, the crux of the Board's analysis grappled with whether Mr. Baxley's mental illness occurred during service and if so, whether it mitigated the discharge. Though the Kurta Memorandum does state that the VA's determination of a service-connected disability should be "persuasive evidence" that the condition existed during military service, it is expressly "not binding" so the Board is free to not bind itself by such a determination. J.A. 121. And even if the Board did find that Mr. Baxley's mental illness occurred during his service, there is still no clear evidence in the record that shows that it excused or mitigated his extensive misconduct.

The Kurta Memorandum does require "liberal consideration" when mental health conditions form the basis of the discharge status review, but there is nothing that shows that the Board, via the medical advisor, did not give liberal consideration here. Moreover, the Kurta Memorandum specifically states that "[l]iberal construction does not mandate

an upgrade." J.A. 123. So, again, the Board is free to conclude that even with liberal construction Mr. Baxley does not get far enough.

Critically, the Kurta Memorandum does not require that all factors that it lists must be included and considered at length in the review, as Mr. Baxley seems to assert. Instead, it uses language like "may also include" or "may be evidence" which is permissive, rather than mandatory. *See* J.A. 120–23. Even if the review was remanded again to the Board to consider all the factors at length that Mr. Baxley argues for, it is unclear to us whether the ultimate outcome would change given the discretion afforded to the Board, so that alone counsels against vacatur and remand on this issue. *See Zevallos v. Obama*, 793 F.3d 106, 115 (D.C. Cir. 2015).

Accordingly, we affirm the District Court's grant of summary judgment for the Board as to the Kurta Memorandum issue.

## V.

For the foregoing reasons, we reverse the District Court's grant of summary judgment for the Board on the Exemption Policy issue and remand with instructions for the District Court to vacate the Board's decision on the Exemption Policy and remand to the Board for further proceedings consistent with this opinion. However, we affirm the District Court's grant of summary judgment for the Board on the Kurta Memorandum issue.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring: I agree with my colleagues that the Army Board for Correction of Military Records (Board) failed to give serious consideration to whether Army Regulation (AR) 600-85, as it existed at the time of Baxley's discharge, mandated that he receive an Honorable discharge characterization. Accordingly, I join the majority opinion in full. I write separately, however, to highlight my view that the equities do not favor Baxley in this case.

Baxley was in the U.S. Army for just over two years, from September 1974 to November 1976. I recount the details of his disciplinary history to underscore that the vast majority of that time—in fact, almost the entirety—involved mischief rather than service. Baxley arrived at his first duty station in January 1975 after the completion of his initial training. Within just over four months, he was confined at a civilian jail for drug violations. Six months later, civilian authorities again detained Baxley for driving while intoxicated, reckless driving and failure to stop for a red light (ultimately reduced to improper driving). He was then sent to the Army's Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) where he was eventually designated a "rehabilitation failure." J.A. 30.

After returning to his unit, Baxley underwent a special court martial for "unlawfully grabb[ing]" a female soldier and was found guilty. J.A. 203. He received a reduction in rank and forfeiture of pay and was sent to a Retraining Brigade for a period of confinement. Although his conduct there initially showed promise, it again took a turn for the worse. In September 1976, military police arrested Baxley for possession of suspected (and later confirmed) marijuana. A week later, Baxley was found without his pass. As punishment, he was required to sign in every hour but soon failed to do so. Two days later, Baxley got into a fistfight with another soldier. By the end of his first month in the Retraining Brigade, Baxley's commanding officer recommended that he be discharged.

In November 1976, Baxley was separated from the Army "Under Other than Honorable Conditions." J.A. 137. Despite his persistent misconduct, and for reasons unclear on this record, Baxley's discharge was upgraded to "Under Honorable Conditions (General)"—the second highest characterization—in 1979. J.A. 133.

Now, almost a half century later, Baxley continues to seek further upgrade of his discharge that would grant him access to the complete package of military benefits. He claims that entitlement based not on the nature of his service but on a technicality. Granted, if the Army chooses to mandate an Honorable discharge under certain circumstances—as it did in AR 600-85's Exemption Policy—we do not second-guess that decision. *See Ass'n of Am. R.Rs. v. ICC*, 978 F.2d 737, 740 (D.C. Cir. 1992) ("This Court is not to inquire as to whether the agency's decision is wise as a policy matter; indeed, we are forbidden from substituting our judgment for that of the agency." (citation modified)). And, here, that choice reflects an admirable desire to incentivize those struggling with addiction to seek help. *See* Joel R. Alvarey, *The Scope of the Alcohol and Drug Abuse Prevention and Control Program's Exemption Policy*, Army Law., Aug. 1980, at 12, 12 (noting the Exemption Policy "grant[s] immunity for the purpose of eliminating the barriers to communication" between those addicted to drugs or alcohol and counselors). But I do not believe that we should enable manipulation of such solicitude to achieve inequitable results.

Setting aside the issue of Baxley's rehabilitation failure, the Board soundly rejected Baxley's discharge-upgrade request on the basis of his service record. It noted that Baxley "engaged in numerous episodes of misconduct" and had a "litany of . . . misbehavior." J.A. 46. Moreover, the "offenses leading to [Baxley's] separation" were "of a criminal nature."

J.A. 34. Accordingly, Baxley's "military conduct can hardly be described as 'honorable' unless it can be excused or mitigated by a behavioral health condition," which the Board found it could not. J.A. 45; *see* Majority Op. at 11–13. This reasoning was neither arbitrary nor capricious (and Baxley does not attempt to argue otherwise).

Consequently, the only way Baxley can receive a discharge upgrade on remand is to show that his discharge was improperly based on a communication protected under the Exemption Policy. I suspect this will be a difficult task. As the one seeking an upgrade, Baxley bears the burden of establishing by a preponderance of evidence the existence of either an error or an injustice. 32 C.F.R. § 581.3(e)(2). On this record, there is no direct evidence Baxley's discharge was based on a protected communication with an ADAPCP counselor. *See* J.A. 227 (outlining what information is protected); Oral Arg. at 42:58–43:51 (amicus conceding that the reason for Baxley's rehabilitation failure is not in the record). In fact, there is some evidence to the contrary. *See* Appellee's Br. at 35 (suggesting Baxley's rehabilitation-failure designation was based on his arrest for driving under the influence); J.A. 208.[*] Granted, the Board must demonstrate a better understanding of AR 600-85, but I am inclined to believe that even a steadfast application of the regulation as we interpret it today will lead to the same result.

---

[*] Amicus argues it is implausible that Baxley's DWI on November 26, 1975, J.A. 208, was the basis for the "November 1975" rehabilitation-failure designation, J.A. 205. Amicus Reply Br. at 14. I see no reason that the designation could not have occurred in the final days of the month before his release from jail.